IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW BYRNE and JESSICA BYRNE, | : | |
| on behalf of themselves and all others | : | CIVIL ACTION |
| similarly situated, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL ELECTRIC, | : | No. 10-7369 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                               August 3, 2011

On November 21, 2008, a General Electric ("GE") dishwasher caught fire in the home of Plaintiffs Matthew and Jessica Byrne. Plaintiffs bring this putative class action, seeking damages and equitable relief on claims arising from the dishwasher's alleged design defects and GE's handling of a product recall. Presently before the Court is GE's motion for summary judgment. The Court will grant the motion in part and deny it in part for the reasons stated below.

I.   BACKGROUND

   A.   Plaintiffs' Fire Damage and Insurance Claim

Plaintiffs purchased a house in Collegeville, Pennsylvania from James Samsel and Steven Kaufman. (Matthew Byrne's and Jessica Byrne's Statement of Contested and Uncontested Material Facts in Opp'n to GE's Mot. for Summ. J. [Pls.' Facts] ¶ 2.) Samsel and Kaufman had remodeled the kitchen and installed the GE dishwasher. (*Id.* ¶ 1; GE's Mot. for Summ. J. Re: Subrogation [GE Mot.] Ex. 1, Decl. of James Samsel ¶¶ 4-5.) Samsel paid $269.10 for the dishwasher in 2006. (GE Mot. ¶ 7; Samsel Decl. Ex. A, June 17, 2006 Samsel Builders invoice.)

A fire occurred in Plaintiffs' home on November 21, 2008. (Pls.' Facts ¶ 7.) Plaintiffs subsequently submitted a claim to their insurer, Nationwide Property & Casualty Insurance Company ("Nationwide"). (*Id*. ¶ 8.) Plaintiffs' Nationwide policy included "Dwelling" and "Personal Property" coverage. (GE Mot. Ex. 2, Timothy Todd. Aff. Ex. A, Byrne policy B1.) The Byrnes' dwelling coverage protected "the dwelling on the residence premises" that is used mainly as the insured's private residence. (*Id*.) Their personal property coverage insured possessions inside the home with the exception of certain vehicles, animals, and trailers. (*Id*. at B1-B3.) The Byrnes also maintained "Replacement Cost Plus" dwelling coverage. (*Id*., Policy Decls. 2.) This coverage provided for reimbursement of "the amount actually and necessarily spent to repair or replace the dwelling . . . [including] up to a minimum of an additional 20% of the Coverage A limit for the additional cost." (*Id*. at K3.)

Nationwide assigned claims adjuster Timothy Todd to handle Plaintiffs' fire losses. (Pls.' Facts Ex. 2, Matthew Byrne Aff. ¶ 3; Todd Aff. ¶ 3.) Todd adjusted the dishwasher as a "Dwelling Item" under Plaintiffs' policy. (Todd Aff. ¶ 8.) He assessed the replacement cost, including labor and installation, at $564.64. (*Id*. ¶ 10.) Todd also factored in sales tax and additional contracting costs, which brought Nationwide's total payment for the dishwasher to $718.22. (*Id*. ¶¶ 12-14.) Plaintiffs received $58,464.86 for their "dwelling loss," including compensation for the dishwasher. (*Id*. ¶¶ 15-20.)

Nationwide initially paid Plaintiffs over $164,000.00 for dwelling and personal property losses they sustained in the fire. (*See* Pls.' Facts ¶ 9.) Plaintiffs, however, characterize this sum as "an arbitrary selection of partial payments" that did not reflect a final adjustment of the claim. (*Id*.) They also deny that Nationwide ever compensated them for the dishwasher. (*See, e.g.*, *id*.)

2

Matthew Byrne asserts that Todd told him that Nationwide would not compensate Plaintiffs for the dishwasher "because Nationwide believed the dishwasher to be the cause of the fire." (Matthew Byrne Aff. ¶ 3.)  He reviewed the exhibits attached to Todd's affidavit, and observed that Todd's adjustment worksheet does not reflect compensation for Plaintiffs' refrigerator.  (*Id*. ¶ 8.)  According to Byrne, this exhibit is inconsistent with

> Mr. Todd's verbal representations to me and my wife, that we had been compensated for the refrigerator but not for the dishwasher. That is why I did not contest the evaluation of the dwelling loss: because Nationwide had already paid a sufficient amount to cover the refrigerator and we were going to pursue the value of the dishwasher against General Electric.

(*Id*.)  Byrne thus believed that Nationwide had "tendered checks sufficient to cover what I believed to be all dwelling losses other than the dishwasher." (*Id*. ¶ 6.)

### B. The Byrnes Sue Nationwide; Nationwide Sues GE

Plaintiffs sued Nationwide in December of 2009, alleging that Nationwide handled their insurance claims improperly.  They received an additional $22,114.47 pursuant to a settlement agreement dated December 28, 2010.  (GE Mot. ¶ 17 n.1; Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. 4; Pls.' Facts Ex. 1, settlement agreement 1.)  This agreement states that the parties resolved "any and all . . . claims the parties have brought or could have brought against each other . . . including any and all claims arising out of the alleged loss to Plaintiffs' premises and contents which occurred on January 17, 2009 and which gave rise to the" lawsuit between Plaintiffs and Nationwide.[1]  (*Id*.)

---

[1] Neither party explains the discrepancy between the dates in the settlement agreement and in Plaintiffs' Complaint in this lawsuit.  For the purposes of this motion, the Court will assume the January 17, 2009 incident referenced in the agreement refers to the November 2008 fire in Plaintiffs' home.

In the course of Plaintiffs' lawsuit against Nationwide, "Nationwide's counsel hinted to Plaintiffs' counsel that Nationwide was negotiating a subrogation release with GE," but refused to involve Plaintiffs in the process. (Pls.' Opp'n 4.) Plaintiffs' Nationwide policy contains a subrogation clause which provides that, in the event Nationwide paid a loss, "an insured's right to recover from someone else becomes ours up to the amount we paid." (Byrne policy L2.) Nationwide subsequently brought a subrogation claim against GE for reimbursement of its payment to Defendants — including the replacement cost of the dishwasher. (GE Mot. ¶¶ 20-21.) GE's insurer settled with Nationwide for $119,615.00 in October of 2010. (*Id.* ¶ 22; *see also* GE's Mem. in Supp. of Mot. for Summ. J. 4.) Nationwide executed a release, purportedly as Plaintiffs' subrogee, that extinguished any further claims against GE arising from the November 2008 fire. (GE Mot. ¶¶ 24-25; Pls.' Facts ¶ 25.)

C.  **The Byrnes sue GE**

Meanwhile, the Byrnes filed a putative class action against GE in the Philadelphia Court of Common Pleas on November 19, 2010. (GE's Notice of Removal 1.) GE removed the case to this Court on December 17, 2010. The Byrnes' action arises from alleged design defects which caused the dishwasher to short-circuit. (Compl. ¶¶ 1, 13-16.) The complaint seeks "individual damages," attorneys' fees and costs for: (1) breach of express warranty; (2) breach of implied warranty; (3) violation of the Magnuson-Moss Warranty Act; (4) violation of the Delaware, New Jersey and Pennsylvania Unfair Trade Practices and Consumer Protection Laws; and (5) breach of contract. (*Id.* ¶¶ 5, 29-32, 35, 41, 44-47, 49-51.) In addition, Plaintiffs seek a declaratory judgment finding the dishwasher defective, certifying Plaintiffs' proposed class, and entering judgment against GE. (*Id.* ¶ 28.)

Plaintiffs' counsel informed Nationwide of his representation "of Matthew and Jessica Byrne for the product liability suit they intend[ed] to file" after the fire in a letter dated January 29, 2009.  (Pls.' Facts Ex. 3, Jan. 29, 2009 Kennerly letter.)  Plaintiffs' settlement agreement with Nationwide also references this lawsuit in two footnotes:

> Defendant [Nationwide] has informed Plaintiffs and their attorney that Defendant, in its capacity as subrogee of Plaintiffs, has entered into a settlement agreement with General Electric Company in connection with the property damage subrogation claim arising out of payments made to Plaintiffs by Nationwide in connection with the loss of January 17, 2009.  Plaintiffs and their attorney have never seen that agreement.  This Settlement Agreement relates only to the claims asserted by the parties in the above-referenced Action.  By executing this Settlement Agreement, it is not the intention of Plaintiffs to release any claims they may have against General Electric directly arising out of the incident of January 17, 2009 and Plaintiffs hereby specifically reserve any rights and causes of action they may have against General Electric.

(*Id*. Ex. 1, Nationwide settlement agreement 1-2 n.1.)  A second footnote reiterates that "[i]n executing this Settlement Agreement, Plaintiffs are not releasing any claims they may have against General Electric."  (*Id*. at 2 n.2.)

The parties dispute whether GE's settlement of its subrogation claim extinguished Plaintiffs' claims against GE.  By agreement of the parties, the Court ordered briefing to address this threshold issue.  GE's motion for summary judgment regarding the subrogation dispute is now ripe for review.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue.  *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992).  In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.   DISCUSSION**

An insurer that has paid a loss under an insurance policy is "entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy."  *St. Paul Fire & Marine Ins. Co. v. Turner Constr. Co.*, Civ. A. No. 07-270, 2008 WL 901709, at *1 n.1 (E.D. Pa. Apr. 2, 2008) (quoting *Black's Law Dictionary* (8th ed. 2004)).  This right of subrogation "places the subrogee in the precise position of the one to whose rights he subrogated."  *Pusl v. Means*, 982 A.2d 550, 557 (Pa. Super. Ct. 2009) (citing *Johnson v. Beane*, 664 A.2d 96, 100 (Pa. 1995)).  The Court's subrogation analysis begins with the parties' contractual subrogation agreement; it is guided, however, by equitable principles independent of the subrogation clause.  *See Zurich-Am. Ins. Co. v. Eckert*, 770 F. Supp. 269, 272 (E.D. Pa. 1991); *see also United States v. Pa. Dep't of Highways*, 349 F. Supp. 1370 (E.D. Pa. 1972) (citing *Jacobs v. Northeastern Corp.*, 206 A.2d 49, 54-55 (Pa. 1965)) (noting that subrogation

rights "do not depend for their existence on a grant in the contract, but are created by law to avoid injustice.").

Pennsylvania courts apply the "made whole" doctrine to subrogation claims. An injured party loses his right to sue a tortfeasor under this standard when he has been fully compensated for the loss at issue. *Pusl,* 982 A.2d at 557-58 (citing *Johnson*, 664 A.2d at 98); *but see Jones v. Nationwide Prop. & Cas. Ins. Co.*, 8 A.3d 311 (Pa. 2010) (granting allowance of appeal as to whether Pennsylvania law requires "that a party suffering damages be made whole before an insurer is entitled to subrogation"). The parties' dispute thus requires the Court to determine: (1) to what extent Nationwide compensated Plaintiffs; and (2) whether any claims against GE remain in light of that compensation and Nationwide's subrogation rights.

### A. Nationwide Paid to Replace Plaintiffs' Dishwasher

#### 1. GE carries its burden to show payment for the dishwasher

GE has established that Nationwide compensated Plaintiffs for their dishwasher. Todd, the claims adjuster assigned to Plaintiffs' case, stated that he adjusted the dishwasher as a "Dwelling Item" and assessed its replacement cost at $564.64. (Todd Aff. ¶¶ 8-10.) Nationwide's records support Todd's position. The dishwasher appears in Nationwide's claim adjustment calculations as a $564.64 dwelling item. (Todd Aff Ex. C, Nationwide dwelling item sub-total for kitchen.) Nationwide's records also document the dwelling item total as $58,464.86, which is consistent with Todd's statement. (*See* Todd Aff. Ex. D, Nationwide summary for dwelling.) Nationwide's letters both to Plaintiffs and Plaintiffs' counsel confirm that Nationwide had paid this sum to reimburse Plaintiffs for "dwelling" losses. (Todd Aff. Ex. E, Apr. 8, 2009 Nationwide letter to Byrnes; Todd Aff. Ex. F., Dec. 16, 2009 Nationwide letter to

Maxwell Kennerly.)  Todd's affidavit establishes that this payment included compensation for the dishwasher.  (Todd Aff. ¶¶ 15-20.)

Nationwide also provides Jessica Byrne's deposition testimony, which was taken in Plaintiffs' earlier action against their insurer.  Mrs. Byrne testified that "the only thing [she] hadn't been paid for at this point is the replacement cost of [her] contents."  (GE Mot. Ex. 3, Jessica Byrne Dep. 9-10.)  As Todd's affidavit established that the dishwasher was not a "contents" item, but was rather a "dwelling item," Mrs. Byrne's testimony further demonstrates that Nationwide compensated Plaintiffs for their dishwasher prior to filing this lawsuit.

2. *Plaintiffs' evidence is inadmissible or irrelevant*

Plaintiffs' evidence in opposition to GE's motion for summary judgment on this point consists primarily of Matthew Byrne's affidavit.  In this affidavit, Byrne states that Todd explained to him that Nationwide would not compensate Plaintiffs for the dishwasher "because Nationwide believed the dishwasher to be the cause of the fire."  (Matthew Byrne Aff. ¶ 3.)  Plaintiffs offer Byrne's version of Todd's comments to him for their truth; this evidence is thus inadmissible hearsay.  *See, e.g., Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 96 (3d Cir. 1999) (applying Fed. R. Evid. 801(c)).

Hearsay evidence in an affidavit supporting or opposing summary judgment may only be considered if the out-of-court declarant could later present the evidence in a form that would be admissible at trial.  *Romdhani v. Exxon Mobil Corp.*, Civ. A. No. 07-715, 2010 WL 4682414, at *2 (D. Del. Nov. 10, 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 466 n.12 (3d Cir. 1989)).  Unfortunately, Plaintiffs do not address this hearsay problem in their briefing.  Nor can the Court identify an exception that might permit them to introduce Byrne's recollection

of Todd's statement at trial. It is not an admission of a party-opponent against whom the admission is offered, as Nationwide is not a party to this lawsuit. *See Kirk v. Raymark Indus.*, Inc., 61 F.3d 147, 164 (3d Cir. 1995); *Schmidt v. Duo-Fast Corp.*, Civ. A. No. 94-6541, 1996 WL 238555, at *3 (E.D. Pa. May 7, 1996). Nor is Rule 803's "residual exception" applicable. This exception "applies only where sufficient indicia of reliability justify the admission of the hearsay into evidence." *Moody v. Twp. of Marlboro*, 885 F. Supp. 101, 104 (D.N.J. 1995). Todd's own affidavit, Mrs. Byrne's deposition testimony and Nationwide's internal records all contradict Byrne's version of Todd's statements. Plaintiffs' hearsay evidence would thus not be admissible at trial and will not be considered by the Court in deciding this motion.

Plaintiffs also argue that Nationwide's internal documents do not reflect any payment for their refrigerator. (Pls.' Opp'n 4.) Even assuming Plaintiffs had shown that Nationwide failed to provide an insurance adjustment for the refrigerator, this showing would not be a smoking gun demonstrating that Nationwide had not in fact paid for the dishwasher. Plaintiffs' policy categorizes refrigerators as "personal property" as opposed to dwelling items. (Byrne policy K5.) It is thus unsurprising that the refrigerator does not appear in the list of dwelling items referenced in Todd's affidavit.

Finally, Plaintiffs direct the Court to language in their settlement agreement and communications with Nationwide which suggests that Nationwide was on notice that Plaintiffs were contemplating a products liability action against GE. (*See* Pls.' Opp'n 4-5.) This evidence does not establish a genuine issue of material fact with respect to Nationwide's payment for Plaintiffs' dwelling loss. Rather, the admissible evidence in the record establishes that Nationwide compensated Plaintiffs for the loss of their dishwasher.

**B. Nationwide's Payment Extinguished Plaintiffs' Claims Against GE**

*1. Nationwide's payments established a right of subrogation*

Plaintiffs argue Nationwide never enjoyed a right of subrogation because "there has been no adjudication conclusively establishing the amount of GE's liability for the dishwasher's loss, as required for the right of equitable subrogation to arise." (Pls.' Opp'n 2.) Plaintiffs' argument is unavailing. Their Nationwide policy provides that Plaintiffs' right to recover became the company's up to the amount that they paid to reimburse Plaintiffs for their loss. (Byrne policy L2.) Equitable considerations do not require Nationwide to wait for a verdict against GE to exercise its subrogation rights.

Indeed, the Pennsylvania Superior Court implicitly recognized a subrogee's right to pursue a pre-verdict subrogation claim in *Holloran v. Larrieu*, 637 A.2d 317 (Pa. Super. Ct. 1994). In that case, plaintiff Thomas Holloran brought a medical malpractice action against a hospital and its allegedly negligent doctors. *Id*. at 318. Holloran's employer, Crown Cork and Seal Co., sought to intervene in the lawsuit to protect its subrogation rights to recover the amount it had already paid for Holloran's medical expenses. *Id*.

In the absence of a subrogation waiver, the court held that Crown enjoyed a right of equitable subrogation to recover the amount it had already spent on Holloran's medical care. *Id*. at 320. The case had not yet been tried to a verdict. Nevertheless, the court concluded that the medical expenses were "already liquidated" because there were records establishing "exactly how much Crown has paid out on behalf of Mr. Holloran." *Id*. at 566-67. The court thus reasoned that "[b]y recognizing Crown's equitable right of subrogation at this point, [it was] simply saying that Crown stands in the Hollorans' shoes for purposes of recovering these medical

expenses. The malpractice defendants are on notice that Crown holds this particular claim, instead of the Hollorans." *Id*. at 567.

Plaintiffs' claims present a similar set of facts. Nationwide's records establish precisely how much Plaintiffs received to replace their dishwasher. Nationwide thus stood in Plaintiffs' shoes with respect to this loss when it settled with GE in October of 2010. The reservation of rights in Plaintiffs' December 28, 2010 settlement agreement with Nationwide does not alter the Court's conclusion; Plaintiffs could not reserve rights Nationwide already held months earlier by virtue of its paying Plaintiffs to replace the dishwasher. Nationwide's settlement with GE therefore extinguished any claims Nationwide held as Plaintiffs' subrogee.

    2. *Nationwide's payment extinguished Plaintiffs' contract and warranty claims*

Recognizing a pre-verdict right of subrogation, the *Holloran* court observed that the presence of a subrogee in the action did not necessarily extinguish all of a plaintiff's claims. In that case, for example, the court held that the plaintiffs could not seek reimbursement for their medical expenses "to make themselves whole, because they never paid them." *Holloran*, 637 A.2d at 567. They could, however, take the remainder of their case to a jury for "specific elements of damage: pain and suffering, loss of life's pleasures, loss of consortium, etc." *Id*. The Court must therefore examine Plaintiffs' claims to determine if any of their claims remain viable given the recovery Plaintiffs have already obtained from Nationwide. *Cf. Carrozza v. Greenbaum*, 916 A.2d 553, 566-67 (Pa. 2007) (citing 40 Pa. Cons. Stat. § 991.1817 (providing for non-duplicative recovery)).

Plaintiffs do not address GE's assertion that the "only ascertainable relief they claim" is

11

the replacement value of their dishwasher. (*See* GE Mem. 2.; *see also* Pls.' Mem. 2-3.) Their complaint seeks "individual damages," fees and costs for: (1) breach of express warranty; (2) breach of implied warranty; (3) violation of the Magnuson-Moss Warranty Act; (4) violation of the Delaware, New Jersey and Pennsylvania Unfair Trade Practices and Consumer Protection Laws; and (5) breach of contract. (*Id*. ¶¶ 5, 29-32, 35, 41, 44-47, 49-51.)

Damages for a breach of express warranty under Pennsylvania law are generally limited to replacement costs. *Antz v. GAF Materials Corp.*, 719 A.2d 758, 763 (Pa. Super. Ct. 1998). Likewise, damages for breach of an implied warranty of merchantability "are measured by the difference between the value of the goods accepted and their value as warranted, at the time and place of acceptance." *Wisniewski v. Great Atl. & Pac. Tea Co.*, 323 A.2d 744, 747 (Pa. Super. Ct. 1974). Under "special circumstances," a plaintiff may also obtain proximate damages for incidental and consequential expenses resulting from the breach of implied warranty. *Id*. Nationwide has compensated Plaintiffs for these expenses, extinguishing these claims. Similarly, under Pennsylvania law the "measure of damages for breach of contract is *compensation* for the loss sustained." *Helpin v. Trustees of Univ. of Pa.*, 10 A.3d 267 270 (Pa. 2010) (emphasis in original). Plaintiffs can obtain no further compensation on their breach of contract claims.

Plaintiffs also bring a claim under the Magnuson-Moss Warranty Act. This statute permits recovery of attorneys' fees and costs in addition to damages. 15 U.S.C. § 2310(d). The Pennsylvania Supreme Court has held that attorneys' fees are a factor in determining whether an insurer has made its insured whole prior to maintaining a subrogation action. *Aetna Ins. Co. v. Confer*, 28 A. 153, 154 (Pa. 1893). However, the record does not indicate that Plaintiffs' incurred any costs or paid any attorneys' fees to obtain compensation from Nationwide for their

dishwasher. Plaintiffs initiated their action against Nationwide in December of 2009; Nationwide had already confirmed payment for Plaintiffs' dwelling loss, including the dishwasher, as of April 2009. (*See* Todd Aff. Ex. E, Apr. 8, 2009 Nationwide letter to Byrnes.) Plaintiffs thus cannot claim fees or costs incurred due to the loss of their dishwasher.

3. *Plaintiffs' consumer protection and declaratory judgment claims remain*

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") permits consumers to recover "actual damages or $100, whichever is greater," for violations of the statute. 73 Pa. Cons. Stat. § 201-9.2(a). "Actual damages" under the statute include "any ascertainable loss of money or property." *In re Bryan*, 111 B.R. 474, 479-80 (E.D. Pa. 1990). The statute also vests courts with broad discretion to award treble damages consistent with the UTPCPL's remedial purpose. *See Schwartz v. Rockey*, 932 A.2d 885, 898 (Pa. 2007).[2]

Plaintiffs do not specifically request treble damages in their complaint. (Compl. ¶ 47.) However, their reference to the statute and allegations that GE violated the UTPCPL are sufficient to trigger a potential award of treble damages under the statute. *Cf. Hall v. Pa. R.R. Co.*, 100 A. 1035, 1040 (Pa. 1917) (noting that "an express reference to the statute" is a prerequisite to obtaining treble damages under law providing for "increased damages"). Such recovery in excess of the actual damages Plaintiffs have obtained from Nationwide could potentially exceed the compensatory damages Nationwide assumed as Plaintiffs' subrogee. *Cf.*

---

[2] Plaintiffs bring this putative class action on behalf of dishwasher owners in New Jersey and Delaware as well as Pennsylvania. Their claims under New Jersey's Consumer Fraud Act may also trigger treble damages awards. N.J. Stat. Ann. § 56:8-1; *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 374 (D.N.J. 2004) (noting that assessment of treble damages is mandatory upon showing that defendant violated New Jersey Consumer Fraud Act). Delaware's Consumer Fraud Act, however, only permits plaintiffs to recover punitive damages if they receive compensatory damages. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983).

*Holloran*, 637 A.2d at 567.

At this early juncture in this case, the parties have conducted discovery only with respect to their subrogation dispute. There is no record upon which the Court might base a determination as to whether treble damages may be recoverable. The Court must therefore deny GE's motion with respect to the consumer protection claims contained in Count V of Plaintiffs' complaint. Count I references "individual damages," which may include treble damages recoverable notwithstanding Nationwide's status as a subrogee. (*See id*. ¶ 28(d).) The Court will thus allow Count I of Plaintiffs' complaint, seeking a declaratory, judgment to proceed. GE is of course free to challenge the viability of these claims at a later stage in the litigation. As merits discovery is now appropriate, the Court will set a discovery deadline for the end of November.

## IV. CONCLUSION

GE has demonstrated that Plaintiffs received full compensation for their dishwasher from Nationwide. GE's showing on this point precludes recovery on the bulk of Plaintiffs' claims. However, the possibility remains that Plaintiffs may recover a sum in excess of their actual damages on their consumer protection and declaratory judgment claims. The Court will therefore deny GE's motion with respect to these claims and permit the parties to commence merits discovery. An Order consistent with this Memorandum will be docketed separately.